# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-3315
_____

Cannon Falls Area Schools, ISD 252

*Plaintiff - Appellant*

v.

The Hanover American Insurance Company

*Defendant - Appellee*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: June 11, 2026
Filed: July 27, 2026
_____

Before LOKEN, GRUENDER, and KELLY, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Cannon Falls Area Schools, ISD 252 ("Cannon Falls") sued its insurer, The Hanover American Insurance Company ("Hanover"), after Hanover denied its claim for hail damage to the roofs of two schools. The district court granted summary judgment to Hanover, holding that the damage fell within a policy exclusion for cosmetic damage. We vacate and remand for further proceedings.

# I.    Background

In April 2022, a hailstorm struck an elementary school and a high school owned by Cannon Falls, causing indentations in the buildings' metal roofs. The hail did not puncture the metal, and neither roof has leaked since the storm. Cannon Falls submitted a claim for the damage to Hanover under a policy that covered "direct physical loss of or damage to" the buildings "caused by or resulting from [hail]." Hanover denied the claim on the ground that the damage fell within the following exclusion in the policy:

> [Hanover] will not pay for cosmetic damage to roof surfacing caused by wind and/or hail. For the purpose of this endorsement, cosmetic damage means that the wind and/or hail caused marring, pitting or other superficial damage that altered the appearance of the roof surfacing, but such damage does not prevent the roof from continuing to function as a barrier to entrance of the elements to the same extent as it did before the cosmetic damage occurred.

Cannon Falls sued Hanover for breach of contract and a declaratory judgment that the policy covered the damage. Its expert, Dr. Matthew Phelps, testified in a deposition that the hail damage had weakened the roofs such that "they will not resist the wind loads or snow loads that are common for the Cannon Falls area." Hanover's expert, Dr. Steven Fulmer, testified that the dents had not reduced the roofs' ability to resist wind or snow loads.

Both parties moved for summary judgment, and Hanover moved to exclude Dr. Phelps's testimony under *Daubert v. Merrell Dow Pharmas., Inc.*, 509 U.S. 579 (1993). Applying Minnesota law, the district court, addressing all three motions in a single order, interpreted the exclusion to apply even if the roofs' lifespans had been shortened or the roofs had been weakened, so long as their "present ability to act as a barrier to the elements" remained uncompromised. Because Cannon Falls presented "no evidence of any leaks or any other incursion of the elements," the district court held that, even crediting Dr. Phelps's testimony, there was no genuine

dispute of material fact that the roof damage fell within the policy exclusion.  It therefore granted summary judgment to Hanover and denied Hanover's motion to exclude as moot.  Cannon Falls appeals, arguing that the hail damage weakened the roofs and shortened their lifespans such that they do not "function as a barrier to entrance of the elements to the same extent as [they] did before."

## II.    Discussion

"We review a grant of summary judgment on an insurance policy interpretation de novo, applying the same summary judgment standard as the district court and using state law to determine coverage issues."  *BCC Partners, LLC v. Travelers Prop. Cas. Co. of Am.*, 140 F.4th 465, 468 (8th Cir. 2025).  "Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-movant, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Id.*

The parties agree that Minnesota law governs interpretation of the policy.  *See Maxus Metro., LLC v. Travelers Prop. Cas. Co. of Am.*, 163 F.4th 441, 449 (8th Cir. 2025).  Because no Minnesota case is directly on point, we must try to predict whether the Minnesota Supreme Court would interpret this policy as excluding coverage for the damage to the roofs. *See Cincinnati Ins. Co. v. Rymer Cos., LLC*, 41 F.4th 1026, 1029 (8th Cir. 2022).  Minnesota courts give unambiguous policy language "its plain and ordinary meaning," and they seek to "give effect to all provisions" where it is possible to do so. *King's Cove Marina, LLC v. Lambert Com. Constr. LLC*, 958 N.W.2d 310, 316 (Minn. 2021).  They "construe ambiguous policy language in favor of coverage and read exclusions narrowly against the insurer." *Id.* (citation modified).  "Insurance policy provisions are ambiguous only when they are reasonably subject to more than one interpretation." *Latterell v. Progressive N. Ins. Co.*, 801 N.W.2d 917, 920 (Minn. 2011) (citation modified).

We first address Cannon Falls' lifespan argument.  We agree with the district court that the relevant policy language "focuses on the roof's functional capabilities

-3-

in the present, rather than in the future." The cosmetic damage exclusion uses present-tense language to ask whether the damage "prevent[s]" a roof from keeping out the elements, not whether a roof will degrade more quickly in the future. Contrary to Cannon Falls' suggestion, nothing in the policy indicates coverage for damage that reduces only the amount of time the roof functions as an effective barrier. The plain language of the policy, then, does not support Cannon Falls' argument that the hail damage needed only to reduce the expected lifespan of the roofs to fall outside the exclusion. *See Calfox, Inc. v. Certain Underwriters at Lloyd's, London*, No. 20-cv-02443-RM-KMT, 2024 WL 1051948, at *6 (D. Colo. Mar. 11, 2024) (construing an identical cosmetic damage exclusion to preclude coverage for damage that did not alter a roof's functionality or performance even if the damage "w[ould] ultimately result in a shorter lifespan for the roof").

We next turn to Cannon Falls' argument that the hail damage has weakened the roofs and impaired their present ability to resist wind and snow loads. According to Cannon Falls, if a roof could previously bear three feet of snow but now can only bear two, it is presently unable to "function as a barrier to entrance of the elements *to the same extent* as" before the damage.

We agree with Cannon Falls. All roofs have an upper limit to how much load they can bear—this is part of the "extent" to which they serve as a barrier to the elements. If a hail-damaged roof can no longer bear the same weight of snow or speed of wind, then it does not function as a barrier to snow and wind "to the same extent" as it did before the damage. Thus, the exclusion speaks of damage as a matter of degree, contrary to the district court's interpretation, which read the policy to deny coverage unless a roof had actually leaked or otherwise admitted the elements. If the roofs are weaker, it does not matter if they have yet leaked or succumbed to a heavier load—what matters under the policy is that the hail damage has rendered them diminished barriers.

The exclusion's language reinforces our interpretation. *See Wesser v. State Farm Fire & Cas. Co.*, 989 N.W.2d 294, 299 (Minn. 2023) (an insurance policy

-4-

should be construed "as a whole"). The exclusion applies when hail "caused marring, pitting or other superficial damage" that affects the roof's appearance but "does not prevent the roof from continuing to function as a barrier to entrance of the elements to the same extent" as before the damage. This implies that some "marring, pitting or other superficial damage" is still covered if it affects the roof's functionality. Hail that punctures the roof and causes a leak is not "marring, pitting or other superficial damage." The district court's interpretation, which would require evidence of "leaks or any other incursion of the elements," fails to heed this implication. *See King's Cove Marina,* 958 N.W.2d at 316.

Resisting this conclusion, Hanover cites three district court cases from other jurisdictions that required the plaintiffs to present evidence of a present leak or other intrusion. Two of these cases involved materially different exclusions that did not contain the "to the same extent" language and therefore lack persuasive value. *See Amphay v. Allstate Vehicle & Prop. Ins. Co.*, No. 2:21-cv-219-Z-BR, 2023 WL 2491285, at *1-2 (N.D. Tex. Mar. 13, 2023) (addressing policy only covering cosmetic damage that "results in water leaking through the surface of a metal roof"); *Iyengar v. Liberty Ins. Corp.*, No. SA21-CV-FB (HJB), 2023 WL 8505692, at *3 (W.D. Tex. Oct. 24, 2023), *R&R adopted by*, 2024 WL 1161321 (W.D. Tex. Mar. 15, 2024) (addressing policy excluding all cosmetic damage that does not result in "penetration of water" or "failure of the 'metal materials' to perform their intended function of keeping out the elements"). The third confronted a substantially similar exclusion language, but it is nonetheless inapposite because the court granted summary judgment based on the plaintiff's failure to "disclose[] any expert in the field of metal roofing systems to rebut the expert proof offered by Defendants on the cosmetic nature of the damages to Plaintiff's property." *J&S Welding, Inc. v. Liberty Mut. Ins. Co.*, 693 F. Supp. 3d 823, 834-35 (W.D. Tenn. 2023), *aff'd*, No. 23-5942, 2024 WL 3495073 (6th Cir. July 22, 2024). None of these authorities persuade us to take a different view of the policy language's plain meaning.[1]

---

[1]In addition to these authorities, the dissent cites *Calfox* for the proposition that "as long as the elements cannot penetrate, the damage is excluded." 2024 WL 1051948 at *6. But *Calfox* supports our reading of the policy. The portion quoted

Hanover argues that our interpretation renders the exclusion meaningless, arguing that any indentation makes a roof weaker to some theoretical "extent." We disagree. First, damage to non-structural features of the roof, such as decorative elements or gutters, could easily fall within the exclusion. Second, we agree with Hanover that damage could still be excluded if it only weakened the roof in an insubstantial, unmeasurable, or inconsequential way and therefore did not affect the extent to which the roof serves as a practical barrier to the elements. Indeed, Hanover's expert testified that the indentations here do not affect the roofs' ability to resist the elements, and the jury could believe that testimony and find for Hanover. But the exclusion is not meaningless just because it is narrower than Hanover prefers.

For these reasons, we believe the exclusion's plain and ordinary meaning supports Cannon Falls' interpretation. At a minimum, it is "reasonably susceptible" to that interpretation, and any ambiguities must be read "in favor of coverage" under Minnesota law. *See King's Cove Marina*, 958 N.W.2d at 316. If Hanover wishes to cover only damage that has already allowed the elements to penetrate the roof, it must do so with unambiguous language. *See, e.g.*, *Amphay*, 2023 WL 2491285, at *1-2.

Here, there is evidence in the record that the hail damage weakens the roofs such that they no longer keep out the elements to the same extent as before the

---

by the dissent does not come from the Court's discussion of a functionality argument but rather a lifespan argument. *See id.* ("*If the damage is cosmetic but will ultimately result in a shorter lifespan for the roof*, as long as the elements cannot penetrate, the damage is excluded." (emphasis added)). On functionality, the *Calfox* court denied summary judgment because evidence indicated that hail may have caused "holes in some shingles [of the roof], permitting water to seep into the shingle below." *Id.* at *7. It found that the policy provided coverage if the roof did not repel water to the same extent as before because the hail damage allowed water to seep into a second layer of shingles. However, the court did not require evidence that the damage allowed water to leak into the building below. This is consistent with our position.

damage. As previously noted, Dr. Phelps testified that the schools' roofs have been weakened such that they "will not resist the wind loads or snow loads that are common for the Cannon Falls area." A factfinder who believed this testimony could find for Cannon Falls.

Alternatively, Hanover argues that Dr. Phelps's testimony should be excluded under *Daubert* because his opinion is speculative and rooted in an unreliable methodology. *See Daubert*, 509 U.S. at 592-93. But the district court did not address this question, and while we may affirm on any basis supported by the record, we believe the *Daubert* motion would benefit from the district court's consideration in the first instance. *See Tenbarge v. Ames Taping Tool Sys.*, 128 F.3d 656, 659 (8th Cir. 1997). After the district court resolves the *Daubert* motion, it may then consider the admissible evidence in the record in light of our opinion and determine if a reasonable factfinder could find in Cannon Falls' favor.

## III.   Conclusion

For the foregoing reasons, we vacate the judgment of the district court and remand for further proceedings consistent with this opinion.

LOKEN, Circuit Judge, dissenting.

I respectfully dissent. All agree the coverage issue turns on the proper interpretation of the term "to the same extent as it did before" in the definition of "cosmetic damage" in Hanover's cosmetic damage exclusion to property damage caused by wind or hail. The district court, consistent with other courts to consider similarly-worded exclusions, concluded this phrase

> "does not change this focus on the roof's present [functional] ability to act as a barrier to the elements. And in this case, there is no dispute that in the three years since the April 2022 hailstorm, the metal roofs on the schools have

-7-

continued to function as a barrier to the elements; there is no evidence of any leaks or any other incursion of the elements.

Order dated December 30, 2025 at pp. 7-8, citing J&S Welding, Inc. v. Liberty Mut. Ins. Co., 693 F. Supp. 3d 823, 833-34 (W.D. Tenn. 2023), aff'd, 2024 WL 3495073 (6th Cir. July 22, 2024); Calfox, Inc. v. Certain Underwriters at Lloyd's, No. 20-CV-02443, 2024 WL 1051948, at *6 (D. Colo. Mar. 11, 2024) ("as long as the elements cannot penetrate, the damage is excluded"); and other cases.

The parties agree the policy's cosmetic damage exclusion unambiguously applies to the damage sustained by Cannon Falls, and it is undisputed the hailstorm did not puncture the metal of the schools' roofs, disengage the roofs' seams, or, most importantly, cause either roof to leak. There is therefore little dispute that the roofs "continu[e] to function *as a barrier to the entrance of the elements* to the same extent as [they] did before the cosmetic damage occurred" -- the roofs did not leak before the storm or after. Like the court, I disagree with the extreme arguments on both sides -- that the district court's interpretation improperly rewrites the policy to Hanover's advantage, or that the interpretation urged by Cannon Falls renders the exclusion meaningless. This is a difficult issue because its application requires case-by-case line drawing, not unlike other frequently litigated property insurance coverage issues.

When there is policy language that has been widely adopted for a type of coverage or exclusion, and courts in various jurisdictions have with substantial uniformity construed that language in a particular manner, as in this case, it is prudent for a federal court exercising its diversity jurisdiction to follow those precedents. In my view, that is the proper path to follow in this case and therefore I would affirm the well-reasoned judgment of the district court in full.

_____